Appellant, Gary McKinney, appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of his minor children to Butler County Children's Services Board ("BCCSB"). We affirm.
Tawynia McKinney is the biological mother of Gary McKinney, Jr., born March 17, 1989, Samantha McKinney, born July 27, 1990, Lee Ann Baker, born December 31, 1992, and Bridgett Ritchie, born March 7, 1996. Appellant is the biological father of Gary Jr. and Samantha.
Appellant and Tawynia divorced in 1990, soon after Samantha's birth. After the divorce, appellant's contact with his children was sporadic. In March 1997, appellant was incarcerated on a drug charge. He was released in August 1997. During his incarceration, appellant had no contact with his children.
Children's services departments have been involved with the children since 1989. There have been numerous allegations that Tawynia abused and neglected the children. There were also allegations of unacceptable living conditions and violent behavior by Tawynia in the children's presence. Although some of these allegations were investigated, after the divorce Tawynia moved between Kentucky and several counties in Ohio to evade investigations.
BCCSB was most recently involved during appellant's incarceration. The Middletown Police Department removed Samantha from Tawynia's custody on February 29, 1996 due to allegations of abuse. Samantha was examined at Children's Medical Center, and evidence of abuse and neglect was found. BCCSB filed a complaint on March 1, 1996 alleging that Samantha was an abused, neglected, and dependent child pursuant to R.C. 2151.031, 2151.03, and2151.02, respectively.
BCCSB then filed a complaint alleging that Gary Jr. and Lee Ann were dependent children. On March 8, 1996, BCCSB filed another complaint, this one alleging that Bridgett was a dependent child. BCCSB was given temporary custody of the children by exparte order. A shelter care hearing was held on March 11, 1996, at which the trial court found probable cause to support the complaints. BCCSB's temporary custody of the children was continued.
On May 29, 1996, BCCSB filed additional complaints alleging that Samantha was an abused, neglected, and dependent child, and that the other children were dependent. An adjudication hearing was held on June 24, 1996, and all four children were found to be dependent. The allegations that Samantha was abused and neglected were withdrawn. BCCSB's temporary custody was again continued.
Upon his release from prison, appellant expressed a desire to gain custody of Gary Jr. and Samantha. He was made a party to the case, and BCCSB formulated a case plan to reunite appellant and his children. This plan included parenting classes, and abuse awareness and substance abuse counseling.
Appellant participated in the first part of a two-part parenting program and some of the counseling, but he failed to attend all of the required sessions for abuse awareness and substance abuse. He also demonstrated resistance to the parenting classes, disagreeing with the information provided. He failed to attend counseling for anger management. As a result, appellant was dropped from some programs, or he stopped attending programs without notice.
Appellant failed to consistently visit his children. In the months leading up to the permanent custody hearing, appellant missed one half of the scheduled visitations. He complained that transportation problems prevented him from attending the visitations, yet he claimed to have numerous means of transportation for his job and other activities. BCCSB became concerned with appellant's verbalization of his anger and his threats towards others during visitations, as well as his inability to empathize with Samantha's trauma from being abused. BCCSB was also concerned about appellant's ability to provide a permanent and stable home, as he had gone from living with a girlfriend to living with another family.
Review hearings were held on September 18, 1996 and December 16, 1996. After each hearing, BCCSB's temporary custody was continued. On May 8, 1997, BCCSB filed a motion to extend temporary custody. On May 15, 1997, BCCSB filed a complaint alleging that Samantha was an abused and dependent child. The basis of the complaint was sexual abuse by Jackie Ritchie, Tawynia's husband when the children were placed in BCCSB custody. A review hearing was held on May 22, 1997, and BCCSB's temporary custody was continued. On August 6, 1997, the trial court determined that Samantha was an abused and dependent child.
On December 5, 1997, BCCSB filed a motion for permanent custody. Permanent custody hearings were held on May 15, 18, 21, and 23, 1998, at which the trial court heard testimony from the case workers and other officials working the case, as well as appellant and Tawynia. On September 10, 1998, the trial court filed an entry granting BCCSB permanent custody of all four children, supported by findings of fact and conclusions of law. Appellant appeals, raising a single assignment of error:
 THE TRIAL COURT'S DECISION TO GRANT BCCSB PERMANENT CUSTODY IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
 In his assignment of error, appellant contends that the trial court abused its discretion by not granting him permanent custody of Gary Jr. and Samantha. Appellant argues that he has taken appropriate measures demonstrating that he should be given custody. He further asserts that the trial court emphasized his failure to complete certain requirements of the established case plan while disregarding legitimate reasons for this failure.
The juvenile court may grant permanent custody to an agency if the court finds, by clear and convincing evidence, that the best interest of the child warrants a grant of permanent custody, and that the child cannot be placed with either parent within a reasonable time. R.C. 2151.414(B) and (B) (1); In re EgbertChildren (1994), 99 Ohio App.3d 492, 495. In determining the best interest of a child, R.C. 2151.414(D) provides that the juvenile court must consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child * * *;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 In addition to determining the children's best interest, the juvenile court is required to assess whether the children can be placed with appellant within a reasonable time or not at all. R.C. 2151.414(B) (1). In making this determination, the court is guided by a variety of factors set forth in R.C. 2151.414(E), including:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
Any other factor the court considers relevant.
In making its determination, the trial court must consider all relevant evidence. If the trial court finds that any of the statutory factors are present, the trial court must make a finding that the children cannot or should not be placed with the parent. R.C. 2151.414(E). See, also, In re William S. (1996), 75 Ohio St.3d 95,98.
Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. A reviewing court will reverse, as a matter of law, a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. Cross
at 479. When the evidence considered pertains to specific statutory findings which the trial court is required to make, the reviewing court must look to see whether the trial court followed the enumerated factors in making its determination, or whether the trial court abused its discretion by deviating from the statutory criteria. See William S., 75 Ohio St.3d at 99.
In the present case, in determining Gary Jr.'s and Samantha's best interests, the trial court considered their interrelationship with appellant and their custodial history. The trial court detailed the long history that children's services departments have had concerning these children. The trial court noted that appellant had ample opportunity to establish bonds with the children, but failed to do so, even with the aid of BCCSB. The trial court determined that appellant's actions have demonstrated that he either cannot or will not provide a safe and stable permanent home. In addition, there are still concerns over appellant's parenting skills and his use of anger and violence as a means of resolving problems.
The trial court noted the present placement of the children in foster care. All of the children are in foster homes, and it is likely that they will be adopted in the coming months. BCCSB has found no impediments to their adoptions, and is seeking to place the three older children in the same home. The trial court found that Gary Jr. and Samantha are well adjusted and well cared for in their foster homes. Thus, the trial court's finding that it is in the best interest of the children to grant BCCSB permanent custody is supported by clear and convincing evidence.
The trial court also determined that it is likely that Gary Jr. and Samantha cannot be placed with either parent within a reasonable period of time. Despite the best efforts of BCCSB, appellant has failed to maintain visitation appointments or counseling as required by the case plan. Appellant had little interaction with his children in the six months preceding the permanent custody hearing. In that time, appellant had completely failed to attend any counseling or parenting programs. Appellant consistently placed his work above his children, using his work as a reason for not visiting his children. Appellant also has failed to secure a stable home in which to raise the children.
BCCSB raised concerns about appellant's parenting skills and his ability to control his anger and substance abuse. Appellant argued with much of the information provided in parenting classes, believing that violence was a proper method of problem solving. During his involvement with BCCSB, appellant displayed a tendency to extreme anger, making disparaging remarks about Tawynia in front of the children and blaming BCCSB for his inability to complete counseling and parenting programs.
The trial court also found that there were valid concerns about whether appellant would relapse into substance abuse or admit to the severity of his past crimes. There was testimony that appellant attended some of the visitations in disheveled dress and smelling of alcohol. Appellant minimized the severity of the crime which resulted in his imprisonment. Appellant blamed others for the crime, arguing that he had been set up and had done nothing wrong. There was also psychological testimony that appellant tends to be self-centered and falls into negative behavioral patterns.
The trial court found that appellant was not likely to finish the courses required by BCCSB or utilize the counseling programs at his disposal. Although appellant protested that he was attempting to fulfill the obligations of the BCCSB case plan, in the six months prior to the permanent custody hearing appellant made no efforts to meet these minimal requirements.
We find that the trial court's determination that, despite the best efforts of BCCSB, the children cannot be placed with appellant within a reasonable time is supported by clear and convincing evidence. Accordingly, appellant's assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.